UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MD SPA SHOP LLC, a Colorado Limited Liability Company,<br><br>          Petitioner,<br><br>v.<br><br>MED-AESTHETIC SOLUTIONS, INC., a California Corporation,<br><br>          Respondent. | Case No.: 21-CV-1050 TWR (LL)<br><br>**ORDER: (1) DENYING PETITIONER'S PETITION AND MOTION TO VACATE ARBITRATION AWARD,**<br>**(2) GRANTING RESPONDENT'S PETITION AND MOTION TO CONFIRM ARBITRATION AWARD,**<br>**(3) DENYING PETITIONER'S MOTION TO SEAL, AND**<br>**(4) CONFIRMING ARBITRATION AWARD**<br><br>(ECF Nos. 1, 8, 9, 11, 16) |

   Presently before the Court are the Petition to Vacate Arbitration Award ("Pet. to Vacate," ECF No. 1) filed by Petitioner and Counter-Respondent MD Spa Shop, LLC ("MDSS") and the Petition to Confirm Arbitration Award ("Pet. to Confirm," ECF No. 11) filed by Respondent and Counter-Claimant Med-Aesthetic Solutions, Inc. ("MAS"), as well as each Party's respective Motion ("Mot. to Vacate," ECF No. 8; "Mot. to Confirm," ECF No. 16). Also before the Court is MDSS's Motion for Leave to File Exhibit F to the Declaration of Thomas F. Gallagher in Support of Motion to Vacate Arbitration Award

Under Seal ("Mot. to Seal," ECF No. 9).  The Court heard oral argument on October 27, 2021.  (*See* ECF No. 21.)  Having carefully reviewed the Parties' arguments, the record, and the law, the Court **DENIES** MDSS's Petition and Motion to Vacate, **GRANTS** MAS's Petition and Motion to Confirm, **DENIES** MDSS's Motion to Seal, and **CONFIRMS** the arbitration award.

## BACKGROUND[1]

MAS is the assignee of a patent for the Total Salt Facial ("TSF") device.[2]  (*See* ECF No. 6-2 at 28–39 ("Final Award") at 30.[3])  MAS purchases all the components of the device and has them shipped to KMI IMI, which then manufactures the TSF device.  (*See id.*)  In approximately January 2017, MAS began selling the TSF system through a network of independent distributors.  (*See id.* at 31.)  It later engaged Aesthetic Management Partners, but the partnership failed.  (*See id.*)

MAS met MDSS in 2018.  (*See id.*)  Over several months, the Parties negotiated a distribution agreement for MDSS to become MAS's exclusive nationwide sales agent for the TSF device.  (*See id.*; *see also generally* ECF No. 6-2 at 1–23 (the "Agreement").)  Under the terms of the Agreement, MDSS was to sell a quarterly quota of TSF devices, with all third-party purchases to be approved by MAS.  (*See* Final Award at 31–32; *see also* Agreement ¶¶ 1.4.1, 2.2.1, 10.2.)  MDSS was to submit advance payment for the TSF devices each quarter.  (*See* Final Award at 5–6; *see also* Agreement ¶ 1.4.2.)  From January

/ / /

---

[1] MDSS requests that the Court take judicial notice of certain documents, including the underlying Agreement between the Parties, the Arbitrator's Final Award, and MDSS's post-arbitration hearing brief.  The Court **GRANTS IN PART** MDSS's request and incorporates by reference the underlying Agreement and incorporates by reference and takes judicial notice of the Arbitrator's Final Award and MDSS's post-arbitration hearing brief.  Because the Court does not rely on any of the other exhibits of which MDSS seeks judicial notice, the Court **DENIES IN PART** the remainder of MDSS's Request for Judicial Notice (ECF No. 8-3).

[2] Although certain filings and exhibits define TSF as "The Salt Facial," the Court relays the facts as found by the Arbitrator.

[3] Citations to MAS's exhibits refer to the pagination provided by MAS.

2019, until the Agreement was executed on May 22, 2019, the Parties operated under the terms that were later finalized in the Agreement. (*See* Final Award at 32.)

MAS and MDSS's relationship began to disintegrate in the summer of 2019 because of multiple breaches of the Agreement on the part of MDSS, including failing to meet its sales quotas, failing to obtain MAS's approval for third-party sales, and allowing its sales personnel to make unauthorized promises to customers. (*See id.* at 33.) MAS's Chief Executive Officer, Allan Danto, formally terminated the Agreement on August 15, 2019. (*See id.*) MDSS in turn retaliated by submitting a claim to American Express ("AmEx") to reverse certain charges MDSS had made to MAS for TSF devices. (*See id.*) MAS later entered into a distribution agreement with MERZ Aesthetic. (*See id.*)

Pursuant to the Agreement, MAS filed a claim with the American Arbitration Association ("AAA") on October 8, 2019. (*See id.* at 29.) MDSS filed an answer and counterclaim on November 12, 2019. (*See id.*) The Arbitrator, John H. L'Estrange, Jr., conducted a hearing over Zoom on March 29 through 31, 2021. (*See id.* at 28.) The matter was deemed closed on May 10, 2021, upon the Arbitrator's receipt of the Parties' closing briefs. (*See id.* at 29.)

On May 24, 2021, the Arbitrator issued his Final Award. (*See generally id.*) He awarded MAS damages in the amount of $1,334,825 for breach of contract but denied MAS's claim for fraud based on MDSS's claim to AmEx. (*See id.* at 34–36; *see also id.* at 38–39.) The Arbitrator denied MDSS's counterclaims for fraud, breach of contract, and conversion. (*See id.* at 36–38; *see also id.* at 39.) Consequently, the Arbitrator determined MAS to be the prevailing party, (*see id.* at 38), and ordered that the AAA administrative fees and Arbitrator's compensation be paid by MDSS. (*See id.* at 39.) Including these fees and costs, MAS's final award came to $1,358,546.50. (*See id.*) The Arbitrator concluded that, "[t]o the extent that any party made other allegations or claims in this proceeding that have not been withdrawn, abandoned, or expressly decided, they are **DENIED**." (*See id.* (emphasis in original).)

/ / /

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. ch. 1, and the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code §§ 1280–1294.2, MDSS filed its Petition to Vacate with this Court on June 6, 2021, on the grounds that "(1): the arbitrator[] exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted[] (Cal. Civ. Proc.[ Code] § 1286.2, subd. (a)(4)); and (2) that enforcement of the award would violate[] existing federal law as established by the Food Drugs & Cosmetics Act [("FDCA")] (21 U.S.C. ch. 9 §[§] 301 et seq.)." (Pet. to Vacate at 2.) MAS filed its initial Answer and Counterclaim/Petition to Confirm the Arbitration Award on June 15, 2021, (*see generally* ECF No. 6), which it amended on June 29, 2021. (*See generally* Pet. to Confirm.) MDSS filed its instant Motions to Vacate and to Seal on June 23, 2021. (*See generally* Mot. to Vacate; Mot. to Seal.)

On June 24, 2021, the Court ordered the Parties to show cause why this action should not be dismissed for lack of subject-matter jurisdiction. (*See generally* ECF No. 10 ("Order to Show Cause").) The Parties responded on July 1, 2021, with MAS providing proof of complete diversity between the Parties. (*See generally* ECF No. 12.) On August 2, 2021, the Court therefore discharged its Order to Show Cause and set a hearing and briefing schedule on the Petitions. (*See generally* ECF No. 13 (the "Aug. 2 Order").) Pursuant to the August 2 Order, MAS filed its instant Motion to Confirm on August 18, 2021. (*See generally* Mot. to Confirm.) The Motions are fully briefed and ripe for adjudication. (*See generally* ECF Nos. 8, 16–20.)

**CROSS PETITIONS AND MOTIONS TO VACATE
OR CONFIRM ARBITRATION AWARD**

**I.   Legal Standard**

Pursuant to the FAA, "at any time within one year after the [arbitration] award is made any party to the arbitration may apply to the court . . . for an order confirming the award." 9 U.S.C. § 9. "[T]he court must grant such an order unless the award is vacated,

/ / /

modified, or corrected." *Id.*  Upon confirming an arbitration award, "[t]he judgment shall be docketed as it if was rendered in an action." 9 U.S.C. § 13.

The FAA enumerates the limited and exclusive grounds on which a federal court may vacate, modify, or correct an arbitral award.  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003).  For example, a judge may vacate an arbitral award only:

(1)   where the award was procured by corruption, fraud, or undue means;

(2)   where there was evident partiality or corruption in the arbitrators, or either of them;

(3)   where the arbitrators were guilty of misconduct in refusing to postpone a hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent to and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  "[Section] 10 of the FAA provides no authorization for a merits review." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).  Rather, to obtain vacatur under Section 10(a)(4), the petitioner "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also U.S. Life Ins. Co. v. Super. Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it." (citing *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1489 (9th Cir. 1991))).  "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Id.* (citing *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

/ / /

/ / /

/ / /

"[A]rbitrators 'exceed their powers' in this regard . . . when the award is 'completely irrational,' . . . or exhibits a 'manifest disregard of law[.]'"[4] *Kyocera Corp.*, 341 F.3d at 997 (first quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986); then quoting *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059–60 (9th Cir. 1991)) (citing *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105–06 (9th Cir. 2003)). On the one hand, "'[m]anifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.'" *Id.* (quoting *Mich. Mut. Ins.*, 44 F.3d at 832) (citing *Comedy Club*, 553 F.3d at 1293).

On the other hand, "[a]n award is completely irrational only where the arbitration decision fails to draw its essence from the agreement." *Id.* at 642 (9th Cir. 2010) (quoting *Comedy Club*, 553 F.3d at 1288) (internal quotation marks omitted). "An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Id.* (quoting *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009)). Consequently, "[a]n arbitrator does not exceed its authority if the decision is a 'plausible interpretation' of the arbitration contract[,]" *see U.S. Life Ins.*, 591 F.3d at 1177 (quoting *Emps. Ins. of Wausau*, 933 F.2d at 1486), and "the court must defer to the arbitrator's decision 'as long as the arbitrator . . . even arguably constru[ed] or appl[ied] the contract.'" *Id.* (quoting *Misco*, 484 U.S. at 38) (alterations in original) (citing *Teamsters Local Union 58 v. BOC Gases*, 249 F.3d 1089, 1093 (9th Cir. 2001); *New Meiji Market v.*

---

[4] Although the Supreme Court has declined to consider whether the "manifest disregard" standard survived its decision in *Hall Street Associates*, 552 U.S. 576, *see Stolt-Nielsen*, 559 U.S. at 672 n.3, the Ninth Circuit continues to apply it. *See, e.g.*, *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 415 (9th Cir. 2011) (citing *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290–91 (9th Cir.), *cert. denied*, 558 U.S. 824 (2009)). Accordingly, so must this Court.

*United Food & Com. Workers Local Union #905*, 789 F.2d 1334, 1335–36 (9th Cir. 1986)). "[T]he question is whether the award is 'irrational' with respect to the contract, not whether the panel's findings of fact are correct." *Lagstein*, 607 F.3d at 642 (quoting *Bosack*, 586 F.3d at 1106). "Whether or not the panel's findings are supported by the evidence in the record is beyond the scope of [the court's] review." *Id.* (quoting *Bosack*, 586 F.3d at 1105).

In sum, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute." *Kyocera Corp.*, 341 F.3d at 994. Rather, the grounds for vacating or modifying an arbitral award "afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *See id.* at 998. This is because the FAA reflects "Congress's decision to permit sophisticated parties to trade the greater certainty of correct legal decisions by federal courts for the speed and flexibility of arbitration." *See id.* Consequently, "[t]he risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)." *See id.* at 1003.

## II.   Analysis

Pursuant to Section 10 of the FAA,[5] MDSS seeks to vacate the Arbitrator's Final Award, (*see generally* Pet. to Vacate; Mot. to Vacate), while MAS seeks an Order

---

[5] MDSS also seeks to vacate the arbitration award under the CAA. (*See* Pet. to Vacate at 2 (citing Cal. Civ. Proc. Code § 1286.2(a)(4)).) But "the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir.2002) (citing *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998). The parties may overcome this strong presumption by "clearly evidenc[ing] their intent to be bound by" state arbitration rules. *See id.* (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 61–62 (1995); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)). "But, a general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Id.* at 1270 (citing *Wolsey*, 144 F.3d at 1213; *Chiron*, 207 F.3d at 1131). Accordingly, the Court "must conclude that the Agreement incorporates the FAA's rules for arbitration." *See id.*

confirming the Final Award and entering judgment under Sections 9 and 13. (*See generally* Pet. to Confirm; Mot. to Confirm.) Specifically, MDSS raises two challenges to the Arbitrator's Final Award: (1) the Arbitrator made an "irrational" computational error in calculating MAS's damages for breach of contract, (*see* Pet. to Vacate ¶ 6; Mot. to Vacate at 2–5); and (2) the Agreement is illegal—and therefore void *ab initio*—under the FDCA because MAS has not registered the TSF device with the United States Food and Drug Administration ("FDA"). (*See* Pet. to Vacate ¶¶ 7–8; Mot. to Vacate at 5–11.) The Court concludes that neither of MDSS's arguments merits vacatur under the Court's "extremely limited review authority." *See Kyocera Corp.*, 341 F.3d at 998.

As for MDSS's first challenge, the Court concludes that the Arbitrator's calculation of MAS's lost profits is not "completely irrational." Here, the Arbitrator calculated MAS's lost profits damages based on his findings that (1) MDSS failed to pay for 87 units it committed to purchase under the Agreement, and (2) MAS's profit on each unit would have been $14,050. (*See* Final Award at 7.) Multiplying MAS's anticipated profit per unit by the 87 units, the Arbitrator arrived at a damages award of $1,222,350 for MAS's lost profits. (*See id.*) According to MDSS, the Arbitrator committed two computational errors: "(1) error in calculation of the timeline of *quarterly* sales/payments due and (2) error in the computation of the number of units purchased by MDSS." (*See* Mot. to Vacate at 2 (emphasis in original).) But the Arbitrator's computation is based on his factual findings, including his credibility determinations and, as MDSS itself conceded at oral argument, the Arbitrator's alleged misreading of the Parties' respective obligations under the Agreement. "Whether or not the [Arbitrator]'s findings are supported by the evidence in the record is beyond the scope of [the Court's] review," *see Lagstein*, 607 F.3d at 642 (quoting *Bosack*, 586 F.3d at 1105), and "the court must defer to the arbitrator's decision 'as long as the arbitrator . . . even arguably constru[ed] or appl[ied] the contract.'" *See U.S. Life Ins.*, 591 F.3d at 1177 (quoting *Misco*, 484 U.S. at 38) (alterations in original) (citing *Teamsters Local Union 58*, 249 F.3d at 1093; *New Meiji Market*, 789 F.2d at

/ / /

1335–36). MDSS therefore fails to establish that the Arbitrator exceeded his powers regarding his calculation of MAS's lost profits.[6]

As to MDSS's contention that the Agreement is illegal, the Court concludes that MDSS has forfeited this challenge.[7] Despite the general "maxim that the illegality of a contract . . . can be asserted at any time[] and is never waived[,] . . . it is not clear that *all* issues of illegality in a contract fall within the unwaivable category." *Styne v. Stevens*, 26 Cal. 4th 42, 54 n.5 (2001) (emphasis in original); *cf.* ECF No. 17 ("Confirm Opp'n") at 4 ("The defense of illegality may be raised at any time." (emphasis in original) (citing *S. Bay Radiology Med. Assocs. v. Asher*, 220 Cal. App. 3d 1074, 1079–1080 (1990)).[8] Under certain circumstances, arbitration can be one such exception. *See Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 29–31 (1992). This is because, "if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether." *Id.* at 29–30 (citing *Cal. State Council of Carpenters v. Super. Ct.*, 11 Cal. App. 3d 144, 157 (1970); *Bianco v. Super. Ct.*, 265 Cal. App. 2d 126 (1968)). Consequently, a party contending that the entirety of a contract is illegal—such as MDSS, (*see, e.g.*, Mot. to Vacate at 5 ("This renders the entire distribution agreement illegal."))—must raise the illegality issue "prior to participating in the arbitration process." *See Moncharsh*, 3 Cal.

---

[6] While the Court may "modify[] or correct[] the award . . . [w]here there was an evident material miscalculation," *see* 9 U.S.C. § 11, MDSS does not advocate for an alternative damages calculation. The Court therefore declines to determine whether the Arbitrator made "an evident material miscalculation."

[7] MAS raises several other arguments against MDSS's illegality challenge, including that: (1) MDSS, as a private litigant, cannot enforce the FDCA, (*see* ECF No. 18 ("Vacate Opp'n") at 5); (2) MDSS is estopped from arguing illegality, (*see id.* at 6–7); (3) MDSS has failed to identify "'an explicit, well defined and dominant public policy' affecting or pertaining to a jurisdiction's most basic notions of morality and justice," (*see id.* at 7–8 (quoting *Hollern v. Wachovia Secs., Inc.*, F.3d 1169, 1172 (10th Cir. 2006)); and (4) MDSS prevented MAS from introducing evidence that it was not necessary for MAS to register the TSF device with the FDA. (*See id.* at 8–9.) Because the Court agrees with MAS that MDSS has forfeited its illegality defense, (*see id.* at 5–6), the Court declines to address MAS's additional arguments.

[8] Consistent with the Agreement's choice-of-law provision, to which neither Party objects, the Court applies California substantive law. (*See* Agreement ¶ 12.14.)

4th at 31. "This rule applies even if the party does not discover the basis for opposing arbitration until after arbitration proceedings have begun." *Reed v. Mut. Serv. Corp.*, 106 Cal. App. 4th 1359, 1372 n.12 (2003), *abrogated on other grounds by Haworth v. Super. Ct.*, 50 Cal. 4th 372 (2010). "In such a case, the objecting party must withdraw from the arbitration process, and commence litigation on the issue of enforceability." *Id.*

"[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture." *See Cummings v. Future Nissan*, 128 Cal. App. 4th 321, 329, *as modified* (Apr. 8, 2005). A contrary rule would "permit a party to sit on its rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award." *See Moncharsh*, 3 Cal. 4th at 30. Not only would this "waste . . . arbitral and judicial time and resources," but it also "would condone a level of 'procedural gamesmanship' that [the California Supreme Court] ha[s] condemned as 'undermining the advantages of arbitration.'" *See id.* (citing *Erickson, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 323 (1983); *Christensen v. Dewor Devs.*, 33 Cal. 3d 778, 783–84 (1983)).

Here, MDSS first raised the purported illegality issue before the Arbitrator in its post-arbitration hearing brief.[9] (*See* Mot. to Vacate at 5 (citing ECF No. 8-2 at E-5:16–22,

/ / /

---

[9] In its Reply, MDSS asserts for the first time that it raised the issue of illegality in its *pre*-arbitration hearing brief. (*See* ECF No. 20 ("Vacate Reply") at 4 (citing ECF No. 20-2 at 11 (per ECF numbering)).) The highlighted passage clearly makes no reference to illegality, the FDA, or the FDCA:

> MDSS maintains that it was fraudulently induced into entering the distribution agreement drafted by MAS by MAS's misrepresentation of its status as manufacturer. In reality MAS was a reseller of the SaltFacial medical devices that were manufactured for MAS by KMI IMI GROUP, a separate company based in Irvine, California.
>
> In the January 1, 2019 Distribution Agreement, MAS represented itself as follows: "MAS is the manufacturer of aesthetic medical devices along with related accessories, supplies, consumables, and disposables ("Products"), including a multi-modal device marketed

1  E-8:8–10, E-16:6–9, E-18:8–11, E-18:23–26, E-24:8–10[10]); Confirm Opp'n at 4 (citing
2  ECF No. 8-2 at E-8, E-10).)  At the hearing, MDSS revealed that it first suspected that the
3  Agreement might be illegal approximately three months before the arbitration hearing and
4  approximately two months before it filed its pre-arbitration hearing brief.  There is no
5  indication, however, that MDSS raised the illegality issue prior to proceeding with the
6  arbitration or that MDSS objected to proceeding with the arbitration upon "discover[ing]
7  the basis for opposing arbitration" approximately three months earlier.[11]  *See Reed*, 106
8  Cal. App. 4th at 1372 n.12.  Further, by not raising the issue prior to the arbitration hearing,
9  MDSS "deprived [MAS] of the opportunity 'during the evidentiary portion of this
10 arbitration to make a record on this issue.'"  *See ECC Cap. Corp. v. Manatt, Phelps &*
11 *Phillips, LLP*, 9 Cal. App. 5th 885, 907 (2017).  In other words, MDSS attempted to
12 "conceal an ace up [its] sleeve[] for use in the event of an adverse outcome."  *See*
13 *Cummings*, 128 Cal. App. 4th at 328.  Under these circumstances, forfeiture is necessary
14 to preserve the basic purpose and advantages of private arbitration.  *See Moncharsh*, 3 Cal.
15 4th at 30; *Cummings*, 128 Cal. App. 4th at 328–29.

16      Even assuming MDSS had not forfeited its challenge to the alleged illegality of the
17 Agreement, MDSS has not met its burden of showing that the Arbitrator manifestly
18 disregarded the law.  MDSS contends that it "raised the issue to the arbitrator, without
19 recognition or consideration." (*See* Mot. to Vacate at 5; *see also id.* at 8 ("[The Arbitrator]
20 ignored MDSS' argument and MAS' admission that it was not registered with the FDA.");
21 Pet. to Vacate ¶ 7 ("The arbitrator further exceeded his authority by refusing to consider

---

under the brand name SaltFacial L'avantage™ Skin Renewal System ("TSF")." (**Ex. 1**, p. 1).  This was a foundational and material representation of the parties' contract.

(ECF No. 20-2 at 11.)

[10] Citations to MDSS's exhibits refer to the pagination provided by MDSS.

[11] Nor is there any reason why MDSS could not have discovered the alleged illegality of the Agreement, which was executed on May 22, 2019, (*see* Final Award at 32), until over one-and-a-half years later when MDSS purportedly suspected its illegality in early 2021.

evidence of the illegal nature of MAS' interstate commercial sale of The Salt Facial . . . medical devices.").) But "[i]n making []his Final Award[,] the arbitrator considered all the evidence presented at the multi-day hearing including testimony, exhibits and the pre- and post-hearing briefs from counsel." (*See* Final Reward at 29.) The Arbitrator therefore considered—and rejected—MDSS's illegality argument. (*See* Final Reward at 39 ("This Final Award is intended to dispose finally of all claims, counterclaims and issues in this arbitration. To the extent that any party made other allegations or claims in this proceeding that have not been withdrawn, abandoned, or expressly decided, they are **DENIED**." (emphasis in original)).) Consequently, at most, MDSS demonstrates "failure on the part of the arbitrators to understand or apply the law." *See Lagstein*, 607 F.3d at 641 (quoting *Mich. Mut. Ins.*, 44 F.3d at 832). Manifest disregard, however, requires "something more." *See id.* (quoting *Mich. Mut. Ins.*, 44 F.3d at 832). MDSS therefore fails to meet its burden of demonstrating that the Arbitrator manifestly disregarded the law.

Because the Court determines that MDSS has failed to establish any grounds for vacating the Arbitrator's Final Award, the Court **DENIES** MDSS's Petition and Motion to Vacate. Accordingly, the Court **GRANTS** MSA's Petition and Motion to Confirm, *see* 9 U.S.C. § 9, and **DIRECTS** the Clerk of Court to enter judgment. *See* 9 U.S.C. § 13.

## MOTION TO SEAL

MDSS seeks to file under seal Exhibit F to the Declaration of Thomas F. Gallagher in support of its Motion to Vacate. (*See* Mot. to Seal at 1–2.) "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). A party seeking to seal a judicial record bears the burden of overcoming this strong presumption. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a

motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016).  Where the underlying motion is more than tangentially related to the merits of the case, the stringent "compelling reasons" standard applies. *Id.* at 1096–98.  Where the underlying motion does not surpass the tangential relevance threshold, the less exacting "good cause" standard applies.  *Id.*

Under either standard, MDSS fails to demonstrate that sealing is warranted here.  Exhibit F is "MAS' accounting of TSF systems purchased by MDSS."  (*See* ECF No. 8-2 at 3 ¶ 11.)  It "contain[s] sensitive pricing and financial information" and that "[t]he release of such information would invade the privacy rights and proprietary financial interests of the parties." (*See* ECF No. 9 at 4 ¶ 3.)  MAS agrees with MDSS's assessment.  (*See id.* ¶ 4.)  Generally, business information that might harm a litigant's competitive standing—including pricing terms—are subject to sealing, even under the more stringent compelling reasons standard.  *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (granting writ of mandamus and ordering district court to file under seal confidential business information, including pricing terms); *AFL Telecomms. LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 946 (D. Ariz. 2013) (citing *Elec. Arts*, F. App'x at 569–10); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, --- F. Supp. 3d ---, 2021 WL 1226470, at *29 (S.D. Cal. Mar. 31, 2021) (collecting cases).

Unfortunately, however, rather than lodging Exhibit F under seal as required under this District's filing procedures, *see* Office of the Clerk, United States District Court for the Southern District of California, *Electronic Case Filing Administrative Policies and Procedures Manual*, § 2(j) (Mar. 31, 2021), Mr. Gallagher erroneously filed it on the public docket.  (*See generally* ECF No. 9 Ex. 2.)  "A request to seal information that was publicly disclosed involves 'an inherent logical dilemma' in that 'information that has already entered the public domain cannot in any meaningful way be later removed from the public domain.'" *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, No. 2:19-CV-1278-BJR, 2021 WL 2778578, at *10 (W.D. Wash. July 2, 2021) (quoting *Victory Sports & Entm't LLC v. Pedraza,* No. 2:19-cv-00826-APG-NJK, 2019 WL 2578767, at *2 (D. Nev. June 24,

2019)). In other words, the "relief [MDSS seeks] is no longer available because the [exhibit is] now available to the public." *See Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012). Under circumstances such as these, denial of MDSS's Motion to Seal is appropriate. *See, e.g.*, *Victory Sports & Ent., LLC v. Pedraza*, No. 219CV00826APGNJK, 2019 WL 2578767, at *2 (D. Nev. June 24, 2019) (denying motion to seal complaint that had already been filed on the public docket after the plaintiff took "no action for weeks"). The Court therefore **DENIES** MDSS's Motion to Seal.

## CONCLUSION

In light of the foregoing, the Court **DENIES** MDSS's Petition and Motion to Vacate Arbitration Award (ECF Nos. 1, 8), **GRANTS** MAS's Petition and Motion to Confirm Arbitration Award (ECF Nos. 11, 16), **DENIES** MDSS's Motion to Seal (ECF No. 9), and **CONFIRMS** the Arbitrator's Final Award (ECF No. 6-2 at 28–39). Accordingly, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Order and the Final Arbitration Award and **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: October 29, 2021

_____
Honorable Todd W. Robinson
United States District Court